UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDWARD VALLEJO,<br>     *Defendant*. | No. 22-cr-15 (APM) |

**REPLY IN SUPPORT OF VALLEJO MOTION TO DISMISS COUNT ONE
AND TO STRIKE ANY REMAINING SURPLUSSAGE**

Defendant Edward Vallejo, through counsel, submits the following reply in support of his motion to dismiss Count One.

**ARGUMENT**

**I.    The Procedural Rules of Judicial, Quasi-Judicial, or Other Deliberative Proceedings Are Not Substantive Laws "Executed" by the Participants in Proceedings Who Adhere to Them**

The government argues that Congress and the Vice-President "execut[e] the Twelfth Amendment by opening and counting the electoral votes," ECF 123 at 17, and thus that interfering with the electoral certification process is a form of hindering or delaying the "execution" of the Twelfth Amendment under 18 U.S.C. § 2384. It further argues that case law stating that only executive branch officers can execute laws is inapposite, because the Twelfth Amendment is an example of a constitutional intermixture of executive, legislative, and judicial authority for "special purposes." ECF 123 at 17. And it argues that any other reading would reflect "the implausible assertion that the relevant provisions of the Twelfth Amendment and the Electoral Count Act are not 'executed' at all." *Id*. at 18.

1

This argument confuses procedures governing the outcome of a process or proceeding, on the one hand, and the execution of substantive federal law, on the other. Under *Buckley v. Valeo*, 424 U.S. 1 (1976), and the government's own argument in support of the obstruction counts, the certification events of January 6th were a kind of "official proceeding," 18 U.S.C. § 1512(c), with a "dispute-resolution function," ECF 123 at 23, that is "judicial in character," *Buckley*, 424 U.S. at 133–34. Like the certification process, virtually every fact-finding or dispute-resolving proceeding is governed by procedural statutes, rules, and regulations that must be obeyed by participants, whether judges, clerks, jurors, or litigants. By following such procedural rules, individuals in such proceedings are not "executing" substantive laws, they are obeying them as participants in a process that determines an outcome, which usually must then be executed (enforced) by the executive branch. Interrupting such proceedings—as protestors regularly do for Congressional hearings—is simply interrupting a proceeding; no question of hindering the execution of a law arises other than the execution of laws evicting the interrupter, if he or she resists.[1]

Indeed, the government's argument that any obedience to a list of procedural rules is a form of "executing" those procedures under § 2384 would have no limit, transforming into executive officers not only Congress members acting for "special purposes," ECF 123 at 17, but also Congress members following procedural laws and regulations in the ordinary course of holding committee hearings, as well as judiciary actors following procedural laws and regulations in the ordinary course of adjudicating disputes. This interpretation of "executing" procedural rules by merely obeying them proves too much, greatly exceeding the common-sense interpretation of officers executing substantive federal law reflected in the plain language of § 2384.

---

[1] *See* Daniel Nasaw, "Why Protesters Code Pink Stay Out of Jail," BBC News Magazine (Sept. 19, 2014), available at https://www.bbc.com/news/magazine-29280937 (describing interruptions of Congressional hearings by Code Pink and the enforcement of laws governing protests and evictions in the U.S. Capitol).

The government's contention that any other reading would mean that "the relevant provisions of the Twelfth Amendment and the Electoral Count Act are not 'executed' at all," ECF 123 at 18, misunderstands how execution works. The Twelfth Amendment is a list of requirements for electors, Congress, and the Vice-President to follow. Like any other list of requirements, its provisions can be obeyed or disobeyed. When obeyed, the question of "execution" does not arise, any more than it arises for a speed limit obeyed by all motorists, or a draft registration requirement honored by citizens. If for some reason the certification rules were disobeyed—such as if the Vice-President, knowing his party would lose, refused to open the envelopes—the question of execution would arise. In such a situation, there would presumably come a point of execution where the Vice-President would be forced to open the envelopes at the direction of enforcing federal officers. In such a situation, the Twelfth Amendment could be "executed" in the same manner as any other law, substantive or procedural. But by simply obeying the rules, like motorists going peacefully down a highway or citizens dutifully registering for the draft, there is no sense in which the Vice-President or the Congress are "executing" anything.

## II.     The Twentieth Amendment Is a Self-Executing Statement of Legal Status

On its face, the Twentieth Amendment is a self-executing statement of legal status, akin to the declaration that someone born in the United States is a natural born citizen. While there are various contexts in which someone's citizenship could be at issue—such as in a criminal or civil proceeding—the legal consequences of a ruling determining that a person was born on U.S. territory settles the matter full stop: the Fourteenth Amendment's citizenship statement does all the work. Likewise, while there are proceedings that determine who is the lawfully-elected president—including the certification of state election returns, the meeting of the Electoral College, the January 6th electoral certification, and any lawsuits or objections accompanying any of those steps—the

legal consequences for presidential power are settled at noon on January 20th full stop: the text of the Twentieth Amendment does all the work.

Arguing otherwise, the government asserts that "the transfer of presidential power is no foreordained process; indeed, it is impossible to carry out without a certified election result and other steps that the government must undertake pursuant to the Constitution and various federal statutory provisions." ECF 123 at 25. And, the government argues, Defendant Rhodes planned a "'bloody and desperate fight'" to stop the transfer of presidential power. *Id.* (citing ECF 1 at ¶ 23). But this argument is a simple equivocation between legal authority and the process by which it is determined. No party disputes that there is a legal process determining who is officially the president, and that this process could be corruptly or forcibly interfered with, from election day fraud, to intimidation of Electoral College members, to attacking the certification hearing. But that does not mean that one can hinder or delay the "execution" of the Twentieth Amendment, which simply declares by fiat that the presidential term of the official winner of that certification process begins at noon on January 20th, any more than one could hinder or delay the immediate, self-executing citizenship guarantee of the Fourteenth Amendment by contesting someone's citizenship in a civil or criminal proceeding.

Likewise, no one disputes that there is a *physical* "transfer of presidential power"—*e.g.*, the transfer of the keys to the White House, Air Force One, and the nuclear briefcase—which may be illegally resisted by force. And no one disputes that such force may in some circumstances reflect "levying war" against the United States, as prohibited by § 2384, or may implicate the execution of various specific statutes and regulations governing the physical transfer of government assets, also prohibited by § 2384. But the physical transfer of presidential assets, and whatever regulations govern them, is conceptually distinct from the transfer of legal presidential *authority* specified by fiat in the Twentieth Amendment as occurring at noon on January 20th. Indeed, it is the self-

executing transfer of legal authority under the Twentieth Amendment that made any attempt to forcibly resist the transfer of presidential assets and other instruments of power from Donald Trump to President Biden after January 20, 2021 unlawful.

In sum, while a "massively bloody revolution" intended to stop the transfer of presidential assets from one administration to the next would undoubtedly violate numerous statutes, regulations, or other laws—and may even be a form of levying war under § 2384—it logically cannot be a form of hindering or delaying the execution of the Twentieth Amendment, a simple and self-executing statement of legal status defining the lawful beginning and end of certified presidential terms.

### III. The Government Misunderstands Vallejo's "Multiple Grounds" Argument

Vallejo argued that (1) at least one of the grounds for Count One listed in the Indictment was legally infirm; and (2) the doctrine of multiple grounds for a conviction discussed in *Yates v. United States*, 354 U.S. 298 (1957), and *Griffin v. United States*, 502 U.S. 46 (1991), compel dismissal of any count where a legally-infirm basis was intermixed with legally-sufficient ones, since it is impossible to know upon which basis the grand jury relied. ECF 95 at 5–6. Likewise, Vallejo argued that the fact that legally-inform bases were presented to the jury undermine confidence in its independence, requiring dismissal without prejudice under *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988).

In its opposition, the government seems to misunderstand Vallejo's argument from *Yates* and *Griffin* as an argument about "multiple conspiracies," stating that neither those cases nor *Bank of Nova Scotia* address multiple conspiracies. ECF 123 at 31. But the issue is not whether multiple conspiracies are alleged, which is generally a fact question for a jury. The issue is that the Indictment alleges a single conspiracy to hinder or obstruct any and all "laws governing the transfer of power." ECF 1 at 8 ¶ 16. At the very least, this "catch all" provision of Count One fails to

provide sufficient specificity to "identif[y] the federal criminal laws that are the subjects of the conspiracy." *United States v. Hayes*, 574 F.3d 460, 472 (8th Cir. 2009). It is thus legally infirm under Rule 7.

Compounding the problem, the three specific alleged instances of such laws cited by the Indictment—the Twelfth Amendment, the Twentieth Amendment, and 3 U.S.C. § 15—each fail to support a claim for a violation of § 2384. Since the allegation regarding "laws governing the transfer of power," ECF 1 at 8 ¶ 16, is fatally vague, it would not matter whether any of the three specific instances alleged qualified as laws executed under § 2384. But certainly, at least one of those three specific theories of liability fails, such as the claim that defendants conspired to block the execution of the Twentieth Amendment's self-executing statement of legal status. Since there is no way to determine whether the grand jury indicted the defendants based on (i) the impermissibly vague "catch all" theory, (ii) one of the legally-insufficient specific bases, or (iii) some legally-sufficient basis (whether listed in the Indictment or unlisted under the "catch all" language), the doctrine of *Yates* requires dismissal of Count One without prejudice.

## CONCLUSION

For the foregoing reasons, Defendant Vallejo respectfully requests that the Court dismiss Count One and strike any prejudicial surplusage unrelated to any surviving theory for Count One.

May 11, 2022                             Respectfully submitted,

/s/ Matthew J. Peed     .
Matthew J. Peed (D.C. Bar No. 503328)
CLINTON & PEED
1775 I St. NW, Suite 1150
Washington, D.C. 20006
(202) 919-9491 (tel)
(202) 587-5610 (fax)

*Counsel for Defendant Edward Vallejo*